# OLE ARNTSON AND OTHERS v. EMBRIT ARNTSON AND OTHERS.[1]

July 24, 1931.

No. 28,367.

[1]Reported in 237 N. W. 820.

*Leonard Eriksson, Harold Ranstad,* and *N. F. Field,* for appellants.

*Frankberg, Berghuis & Frankberg,* for respondents.

HILTON, J.

John Arntson and his wife, Martha Arntson, were the parents of 11 children. At the time of the trial the ages of the children ranged from 28 to 49 years. The plaintiffs (appellants) and two of the defendant daughters were unmarried. The other children were all married. John and Martha Arntson had each acquired some land by inheritance and some by homesteading and purchase. They owned an aggregate of 848 acres in Otter Tail and Clay counties, Minnesota.

This action, tried to the court without a jury, was brought to enforce the specific performance of a claimed sale and conveyance by the parents to plaintiffs of 440 acres of the Otter Tail county land, 200 of which had been inherited by the mother and 240 by the father. The contract was claimed to have been entered into on October 12, 1923. The parents both died intestate, the mother on January 10, 1924, aged 64 years, and the father on July 11, 1928, aged 83 years. All of the children had remained at home with their parents working on the home farm until they were married; one of them at least remained there after marriage. The unmarried daughters always resided at the home place.

On October 12, 1923, one of the plaintiffs went to Pelican Rapids and took one Frazee (the president of a bank there) to the home

place of John and Martha Arntson to prepare some papers. Frazee brought with him seven (Booth) blank warranty deed forms and some writing paper. At that time plaintiffs and another son, Embrit (a respondent) were present in the room where the mother was in bed suffering from a cancer ailment from which she died within four months. A physician was then attending her. The father was in another room. Frazee testified that he did not have any conversation with either the father or mother.

Certain memoranda were made by Frazee at the time. Evidence disclosed that Embrit wrote the names of the father and mother at the bottom of each deed blank and put an X mark between the first and second names of each of the parents. The father did not touch the pen that made the marks, and the mother only touched the pen when the mark was made on one of the deed blanks. Neither the father nor mother read the blanks or memoranda. One memoranda contained a description of lands that neither of the parents owned.

Frazee could not tell which of the memoranda made by him was to go with any particular deed blank. He was given no adequate definite instructions about filling in the deeds but was to receive them afterward; none were ever received. He took the blank deeds and the memoranda with him to his bank, where they remained until the bank was closed by the superintendent of banks. They were in the hands of several other persons afterward and were finally introduced in evidence at the trial. Frazee testified that he did not know what land some of the prices stated in the memoranda referred to; he could not complete the papers until further information was given him. Plaintiffs' theory was that Frazee was an escrow holder of the paper. None of the blank forms contained dates or names of grantors or grantees; there were no names of witnesses, no acknowledgments, descriptions of property, or considerations stated. All that appeared upon the blanks, except the printed portion thereof, were the names of John Arntson and Martha Arntson and the X marks referred to. As to the details of certain other features of the case the evidence was in dispute.

The complaint alleged that the parents in October, 1923, proposed to all their children that all of the real estate of such parents be bought by the children and recites the description of the respective pieces of land and the consideration and terms of payment to be made therefor in each instance; that the proposal was accepted by plaintiffs and by each of the children and an agreement made that the parents should sell their lands to the children. The answer specifically denies any such arrangement or transaction as so set forth in the complaint and that the lands were never transferred or sold according to any such arrangement or transaction whatever. The details as to lands other than the 440 acres, the subject of this action, need not here be stated.

The claim upon which plaintiffs based this action for specific performance was that the land here involved was sold to them for the following consideration: (1) $5,600 in cash to be paid by plaintiffs within a reasonable time after the death of the parents; (2) the payment by plaintiffs of the debts of the parents which were owing at the time of their respective deaths, including the release by plaintiffs of any and all claims which they might have against their parents for labor and services performed for them and money advanced to them; (3) the payment by plaintiffs of the funeral expenses and expenses incurred during the later years of their lives, including shelter, provisions, care, and other necessities. The foregoing was the substance of the claim made in the complaint.

This is essentially a fact case. The answer in addition to denying that there was any such agreement made, affirmatively alleged that the father was, on the date mentioned, had been before and was thereafter until his death, wholly incompetent to carry on or transact business of any kind, and also properly traversed other allegations of the complaint.

The findings of fact numbered 1, 2, and 3 were as to the ownership of certain described lands by the father and of certain others by the mother at the time of their respective deaths; the proceedings in probate court in the matter of the estate of each; the relationship of plaintiffs and defendants, the 11 children being the only

heirs at law of the parents. These findings are in accordance with allegations in the complaint. Finding 6 has to do with the second cause of action, which was dismissed by consent of the parties and need not have been referred to. Findings of fact 4, 5, and 7 are as follows:

"4. That the evidence is insufficient to support the allegations of the complaint that the said decedents, John Arntson and Martha Arntson, or either of them sold or agreed to sell, or conveyed or agreed to convey, the lands hereinabove described, or any part thereof, to the plaintiffs or to any or either of them, as set forth and alleged in the complaint or otherwise, and said allegations of the complaint are found not true.

"5. That the evidence is insufficient to support the allegations of the complaint that the decedents, John Arntson and Martha Arntson, or either of them sold or agreed to sell, or conveyed or agreed to convey, the land hereinabove described, or any part thereof, to the defendants or to any or either of them, as set forth and alleged in the complaint or otherwise, and said allegations of the complaint are found not true.

\* \* \* \* \*

"7. That the evidence is insufficient to support the allegations of the complaint save as hereinbefore specifically found."

As conclusions of law the court found that the defendants were entitled to judgment that the action be dismissed upon the merits. There followed motions for an order amending the findings of fact and conclusions of law and, if the same were denied, that a new trial be granted. The motions were denied. Judgment was entered and this appeal taken.

■ The assignments of error having to do with rulings of the court on the admission or rejection of proffered evidence are in the main without merit. In any event the error as to some of them was at the most unimportant and trivial. Plaintiffs were not prejudiced thereby. 1 Dunnell, Minn. Dig. (2 ed. & Supp.) § 416, and cases cited.

■ The complaint, in the prayer for relief, asked that the American State Bank of Fergus Falls, the administrator of the estates of the parents, execute a good and sufficient warranty deed and deliver the same to plaintiffs upon the payment of the cash balance of the purchase price thereinbefore described in the complaint; that plaintiffs be adjudged to be and to have been the owners entitled to the use and possession of the lands in question, etc. There was no request for a money judgment. In certain assignments of error plaintiffs complain because the court failed to make an alternative conclusion of law that plaintiffs were entitled to a judgment for $3,200 against the estate of their parents on account of expenses incurred. There was no issue of that nature raised either by the pleadings or at the trial. This was not an action for damages but for specific performance. The nature and theory of the case cannot be changed upon appeal after a trial has been concluded. 1 Dunnell, Minn. Dig. (2 ed. & Supp.) § 401.

Many of the assignments of error have to do with the refusal of the court to make certain specified findings of fact, which suggested findings had some support in the evidence and might have been proper had the court resolved these fact questions in favor of plaintiffs. No good end would be subserved by giving either in whole or in part the substance of the requested findings, which were based on portions of the evidence favorable to plaintiffs.

Much of plaintiffs' argument is predicated on the proposition that there was an oral contract entered into on October 12, 1923, or shortly prior thereto. Had there been, the situation might have been entirely different. The court held otherwise; the holding was warranted by the evidence. As a trier of fact it was the duty of the court to consider and weigh all the evidence and to determine what the facts were. It was amply justified in reaching the conclusion that the plaintiffs, upon whom the burden of proof rested, had failed to make out a case.

■ The important issue in the case was whether the father and mother of plaintiffs had conveyed or agreed to convey the lands in question to them. That issue was squarely raised by the pleadings, and much of the evidence was directed thereto.

There was an abundance of evidence showing that at the time in question, for some time before, and for some time thereafter John Arntson was afflicted with senile dementia and was incompetent to enter into or understand business transactions or a contract such as was here attempted to be established. The court believed that evidence and found as hereinbefore set forth in findings 4, 5, and 7.

■ A mere statement of the situation relative to the blank deed forms and what was done with them establishes the fact that there was no transfer of real estate accomplished thereby. The evidence as to any oral agreement or contract was wanting in such a degree as to more than justify the court in holding that there was none made. The assertions of plaintiffs that there was a part performance that took the case out of the statute of frauds was not found by the court to have adequate support in the evidence. Plaintiffs had however made certain disbursements for funeral and other expenses of the parents and for the home place expenditures, but they retained all of the proceeds from the 440 acres. Cases cited by plaintiffs wherein there was in fact an oral contract between competent parties and acts thereunder amounting to a part performance are not in point here.

■ Plaintiffs criticize findings of fact 4, 5, and 7 and assert that they are not in accordance with G. S. 1923 (2 Mason, 1927) § 9311, which provides:

"When an issue of fact has been tried by the court, the decision shall be in writing, the facts found and the conclusions of law shall be separately stated, and judgment shall be entered accordingly."

Counsel refers to the case of Palmer v. First Minneapolis Tr. Co. 179 Minn. 381, 230 N. W. 257, 258. In that case a finding of fact that "the evidence fails to establish the cause of action set out in the complaint herein" was held not to be a finding of fact but a mere legal conclusion from the facts. Cases cited in the Palmer decision were ones in which no findings whatever were made, and it therefore followed that the statute relative to the making of findings had not therein been complied with.

The findings here are not such as appeared in the Palmer case. Here they are in effect that the evidence was insufficient to support the allegations of the complaint that the parents or either of them sold or agreed to sell or conveyed or agreed to convey the lands or any part thereof to plaintiffs, etc. as set out and alleged in the complaint or otherwise, and that such allegations of the complaint were not true.

Then, too, the court found as a fact (1) that after the occurrence of October 12, 1923, and on the date of her death, January 10, 1924, Martha Arntson was the owner of part of the land involved in this action and (2) that John Arntson at the time of his death, July 11, 1928, owned the remainder of the lands. The ultimate issuable facts raised by the pleadings and appearing in the evidence are disposed of in the findings. That is all that was necessary. To go further into detail would have served no useful purpose and would have unnecessarily extended an already lengthy record.

The findings were sufficient and were not mere conclusions of law. Findings should not contain evidentiary facts. 6 Dunnell, Minn. Dig. (2 ed. & Supp.) §§ 9851, 9852, and cases cited; 1 Elliott, Pr. & Proc. § 629; Hayes v. Hayes, 119 Minn. 1, 137 N. W. 162; Sheehan v. First Nat. Bank, 163 Minn. 294, 204 N. W. 38; W. B. Foshay Co. v. Mercantile Tr. Co. 175 Minn. 115, 220 N. W. 551. The findings are not within the criticism suggested in War Finance Corp. v. Erickson, 171 Minn. 276, 214 N. W. 45; and Benson v. Barrett, 171 Minn. 305, 214 N. W. 47.

We have carefully considered the numerous assignments of error in the lengthy record and the exhaustive briefs and oral arguments. We are of the opinion that the conclusion of the learned trial court made after due deliberation was correct.

Judgment affirmed.